UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID TODD BENNET, SR.,                    No. 14-14628

                Plaintiff

v.                                         District Judge Paul D. Borman
                                           Magistrate Judge R. Steven Whalen

ADAM KANDULSKI, M.D., ET AL.,

                Defendants.

_____ /

## REPORT AND RECOMMENDATION

On December 8, 2014, Plaintiff David Todd Bennett, Sr., a prison inmate in the

custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil

complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical

needs, in violation of the Eighth Amendment. Before the Court is a Motion to Dismiss

filed by Defendants Adam Kandulski, M.D., Joshua Buskirk, P.A., and Robert Lacy, D.O.

[Doc. #14], which has been referred for a Report and Recommendation under 28 U.S.C. §

636(b)(1)(B).  For the reasons discussed below, I recommend that the motion be

GRANTED, and that the Plaintiff's complaint be DISMISSED WITH PREJUDICE.

### I.   FACTS

Plaintiff summarizes his claim as follows:

"In Jan. 2012, I suffered severe cramping resulting in a lump at the base of
my penis that is extremely painful.  I was seen by all three defendants on

-1-

various occasions, and have not been treated to heal the lump as the M.D.O.C. does not pay for 'erectile issues.'" *Complaint* [Doc. #1], p. 3.

More specifically, Plaintiff alleges that on February 10, 2012, he was seen by an R.N., who acknowledged the existence of a lump at the base of Plaintiff's penis. The R.N. stated that he would schedule an appointment with Dr. Kandulski. *Complaint*, ¶ 8. On February 16, 2012, Plaintiff was seen by Physician's Assistant Buskirk, who was unsure of the problem, but who said he would refer Plaintiff to Dr. Kandulski. *Id*. ¶ 9. On February 21, 2012, Dr. Kandulski examined the Plaintiff, opining that the lump "might be a deep tissue cyst," but ruled out cancer. *Id*. ¶ 10. Kandulski prescribed antibiotics and Tylenol for pain. *Id*. ¶ 11.

Dr. Kandulski saw Plaintiff again on March 7, 2012, indicating that he was unsure of the diagnosis. Kandulski referred the matter back to P.A. Buskirk. *Id*. ¶ 12. Buskirk performed an examination on March 26, 2012, and when Plaintiff asked about pain management, Buskirk said he would refer him back to Dr. Kandulski. *Id*. ¶ 13.

Plaintiff states that on June 6, 2012, he filed a grievance, complaining about being bounced back and forth between Kandulski and Buskirk for four months. *Id*. ¶ 14. On June 26, 2012, Dr. Kandulski again saw the Plaintiff, who complained of pain resulting in sleep deprivation, impaired urinary flow, and discharge. Dr. Kandulski told Plaintiff that he would refer the matter to Dr. Squire in Lansing, to determine whether referral to a urologist would be appropriate.  *Id*. ¶ 16. On July 10, 2012, Plaintiff was seen by P.A. Buskirk, who said he was unsure of a diagnosis, even though he had previously opined

that Plaintiff had Peyronies disease. *Id*. ¶ 17. Dr. Kandulski saw Plaintiff on August 1, 2012, stating that Dr. Squire had declined to approve a referral to a urologist. *Id*. ¶ 18. Kandulski opined that the lump might be Peyronies disease, and scheduled a follow-up appointment for three months. *Id*.

At the follow-up appointment on November 1, 2012, Dr. Kandulski noted that the lump seemed to be getting larger, and scheduled a follow-up appointment for six months. Plaintiff alleges that Kandulski refused to prescribe pain medication. *Id*. ¶ 19.

On May 1, 2013, Dr. Kandulski again examined Plaintiff. Stating that he wanted a second opinion, he called P.A. Buskirk into the room. Kandulski said that he would schedule an x-ray to determine if there was any calcification.  Plaintiff complained of a new symptom of tingling in his scrotum, and Kandulski told him to send a kite if it got any worse. *Id*. ¶ 20. Kandulski saw Plaintiff next on May 22, 2013, telling him that the x-ray did not shed any light on the situation.  *Id* ¶ 22.  On November 26, 2013, Dr. Kandulski asked Plaintiff about whether he exhibited Peyronies disease symptoms, which Plaintiff denied.  Plaintiff did, however, tell Kandulski that his penis seemed to be shrinking, which made urination difficult. *Id*. ¶ 23.

Dr. Kandulski saw the Plaintiff on June 10, 2014, telling him that he was going to refer him to Dr. Lacy, the Regional Medical Director. *Id*. ¶ 24. Dr. Lacy examined Plaintiff on July 2, 2014, opining that the lump was not consistent with Peyronies, because it was on the interior muscle tissue and there was no plaque build-up on the

exterior. Dr. Lacy said that Plaintiff needed to be examined by an outside specialist. *Id*. ¶ 25. On August 21, 2014, Plaintiff was taken to Duane Waters Hospital, and seen by one "Sandoval." Plaintiff is not sure of "Sandoval's" medical title. In any event, Sandoval prescribed Terazosin for urinary problems. She also diagnosed kidney problems and an enlarged prostate. She ordered blood work and scheduled an appointment for a month later. *Id*. ¶ 26. On August 25, 2014, Plaintiff was seen by "medical" at the prison and had his blood drawn. *Id*. ¶ 27. On September 9, 2014, Plaintiff was seen by Dr. Kandulski, who prescribed medication. Kandulski said that Plaintiff's blood tests were all normal, and that he would not need to be seen by a specialist a second time. *Id*. ¶ 28. On October 14, 2014, Plaintiff complained to Dr. Kandulski that he was experiencing headaches as a result of the Terazosin. Dr. Kandulski changed the prescription to Tamsulosin.  *Id*. ¶ 29.

In their motion, Defendants argue that (1) Plaintiff failed to exhaust his administrative remedies as to Defendant Lacy, and as to any claims against Defendants Kandulski and Buskirk that arose after June 11, 2012; and (2) Plaintiff has not pled a plausible claim of deliberate indifference.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416,

419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

## III.   DISCUSSION

### A.   Deliberate Indifference

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care.  *Estelle v. Gamble,* 429 U.S. 97, 103 (1976).  Prison officials may not act with deliberate indifference to the medical needs of their prisoners.  *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a  prescribed plan of treatment, or a delay in medical treatment.  *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation.  *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703.  "Where a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra* ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

For purposes of this motion, I will assume that Plaintiff had a medical condition that was sufficiently serious to satisfy the objective prong of the deliberate indifference test. It is on the subjective prong that Plaintiff's claim falters.

The allegations in Plaintiff's complaint show that these Defendants saw him numerous times between February 10, 2012 and October 14, 2014. There was a provisional diagnosis of Peyronies disease that Dr. Lacy ruled out on July 2, 2014. Dr. Kandulski examined Plaintiff on February 21, 2012, ruling out cancer, and prescribing antibiotics and Tylenol for pain. In June of 2012, Dr. Kandulski referred Plaintiff to Dr. Squire in Lansing, for Dr. Squire to determine whether a referral to an outside urologist was appropriate.[1] There were continuing follow-up appointments with Kandulski and Buskirk, and although Plaintiff alleges that Dr. Kandulski did not prescribe stronger pain medication, he had been given Tylenol for pain. Dr. Kandulsi also ordered x-rays, which were inconclusive. Dr. Lacy ordered an outside consultation, and on August of 2014,

---

[1] Dr. Squire is not part of this motion, and his refusal to refer Plaintiff to a urologist is not attributable to these Defendants.

Plaintiff was taken to Duane Waters Hospital, where blood was taken and at which time he was prescribed Terazosin for urinary problems. In October of 2014, Dr. Kandulski changed the Terazosin prescription after Plaintiff complained of side effects.

To be clear, and taking Plaintiff's allegations as true, he did not receive top-rate medical care. Prison inmates rarely do, and it is unlikely that the evaluation and treatment of Plaintiff's condition was as focused or timely as what a lawyer with the same condition would experience in free society, where a referral to a urologist would have been made *post haste*. But again, deliberate indifference requires a showing of more than inadequate care, mis-diagnosis, or even negligent treatment. *Westlake v. Lucas, supra*. Whatever disagreements Plaintiff has with the medical attention he received, he has not plausibly met the more demanding standard of deliberate indifference.

## B.   Exhaustion

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In *Woodford*, the

-8-

Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

Attached to Defendants' motion as Exhibit A is the MDOC's Step III Grievance Report showing that for the time period in question, Plaintiff took only one grievance through the third step of the MDOC policy. The Plaintiff filed that grievance at Step I on June 28, 2012, complaining of his medical treatment by Defendants Buskirk and Kandulski on June 11, 2012. Plaintiff did not name Defendant Lacy in any grievance. It appears, then, that Defendants are correct that Plaintiff failed to fully exhaust all of his claims. Ordinarily, that would result in dismissal of those claims without prejudice. *Boyd v. Corrections Corp. of America,* 380 F.3d 989, 994 (6th Cir.2006). However, 42 U.S.C. § 1997e(c)(2) provides:

> "In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."

As discussed above, the Plaintiff has failed to state a claim upon which relief can be granted. Therefore, the Court may dismiss the complaint with prejudice, notwithstanding any failure to exhaust.

## IV.   CONCLUSION

I recommend that Defendants' motion to dismiss [Doc. #14] be GRANTED, and that the Plaintiff's complaint be DISMISSED WITH PREJUDICE.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: February 8, 2016

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 8, 2016, electronically and/or by U.S. mail.

s/C. Ciesla
Case Manager

-11-